HAMMER v. ROGERS *et al.*

No. 2041, Okla. T. Opinion Filed June 22, 1908.

(96 Pac. 611.)

NEW TRIAL—Statutory Right—Recovery of Real Property—Joinder of Other Objects in Suit. Where the principal object of an action is the recovery of real property, the party against whom the judgment is rendered may, at any time during the term at which the judgment is rendered, have another trial as a matter of right, and this, although there is joined with such principal object, and as incidental thereto, the cancellation of the evidence of title of the adverse party in the nature of equitable relief.

(Syllabus by the Court.)

*Error from District Court, Garfield County; C. F. Irwin, Judge.*

Action for recovery of real property by Albert Hammer against Fred S. Rogers and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

On the 19th day of May, A. D. 1903, the plaintiff in error, as plaintiff, commenced his action against the defendants in error, as defendants, in the district court of Garfield county, territory of Oklahoma, by filing therein his petition, whch alleges that, on the 3d day of July, A. D. 1901, he was, and ever since has been, and is now, the equitable owner of certain real estate situated in said county and territory, and that he was then and there, and ever since has been, and is now, entitled to the immediate possession thereof. Plaintiff further alleged that, on said 3d day of July, A.

D. 1901, the defendants wrongfully entered into the possession of said real estate, and ever since then have, and do now, unlawfully keep plaintiff out of possession thereof; that the rental value of said real estate, ever since the same was so unlawfully taken possession of by said defendants, is the sum of $300 per month, further alleging that there is now due plaintiff from said defendants, as rental and profits from said real estate, the sum of $5,700, and plaintiff prays judgment against said defendants for the possession of said real estate, and for the sum of $5,700, and for the future rents and profits of said real estate from that date, at the rate of $300 per month, until the rendition of judgment therein.

Afterwards, in due time, on the 2d day of July, A. D. 1903, the defendants each, by leave of court, filed an amended answer, wherein they expressly deny each and every material allegation contained in plaintiff's petition, except as therein admitted. And as a further defense, they alleged that on the 16th day of September, A. D. 1893, the quarter section of land in which the land involved in this suit is contained was government land, subject to homestead entry, and subject to be occupied and entered for town-site purposes under the then existing laws of the United States; that the real estate herein sued for constituted a portion of said quarter section; that on the 19th day of September, A. D. 1893, William Coyle made homestead entry No. 143 for said quarter section; that on September 28, A. D. 1893, said plaintiff filed a contest against said entry, alleging prior settlement on the land, and that numerous other homestead claimants filed similar contests. That thereafter, on April 16, A. D. 1894, C. M. Hobbs, Peter Bowers, and Eugene Kanyon, as trustees of the town-site settlers upon said quarter section of land, intervened in said cause, and claimed the same for town-site purposes; that said contests and claims were heard before the local United States land office at Enid, and on the 13th day of November, A. D. 1895, said cause was decided by the register and receiver of said land office, and that, within the time prescribed by law, the said cause was duly appealed, by the parties to said proceedings, to the Commissioner of

the General Land Office at Washington, D. C.; and on the 29th day of April, A. D. 1897, the Commissioner of said Land Office decided said cause, awarding the town-site claimants the right to enter said quarter section of land, from which decision the plaintiff, with the other homestead claimants, appealed to the Secretary of the Interior, and that thereafter, on February 2, A. D. 1898, the Secretary of the Interior rendered his decision, affirming that of the General Land Office, and holding that each of the claims of the homesteaders, including plaintiff, to said quarter section was speculative, and designating the board of town-site trustees then in office to make the entry for town-site purposes, upon proper compliance with the law. That thereafter said board of town-site trustees, in due time, made application and submitted their proof, and a patent for said quarter section of land was issued to them as such trustees by the United States government. That thereafter in due time said board caused a plat to be made of said quarter section, dividing same into lots, blocks, streets, and alleys, and on the 19th day of September, A. D. 1898, filed the same for record in the office of the register of deeds of Garfield county, territory of Oklahoma; and thereafter on the 19th day of October, A. D. 1898, said board executed a deed to S. L. Keegan for the lot in controversy in this action, and the same was recorded on the 20th day of October, A. D. 1898, in the office of the register of deeds of said county, the said Keegan being then and there in the actual possession of said lot. That thereafter, to wit, on the same date, said Keegan executed a deed to said lot to Maggie Keegan, the same being filed for record in the office of the register of deeds of said county on the 30th day of January, A. D. 1899. That thereafter, to wit, on the 9th day of October, A. D. 1899, said Maggie Keegan and husband executed a deed to said lot to Louis A. Faubion, and the same was properly filed for record in said county on the same day. That thereafter, on the same day, said Faubion and wife executed a deed to said lot to Fred S. Rogers and E. C. Gannon for a one-half interest in said lot, and the

same was properly filed for record on the same day in said county. Thereafter, to wit, on the 3d day of September, A. D. 1900, Louis A. Faubion executed a deed to William H. Divers for an undivided one-half interest in said lot, and the same was properly filed for record in said county on the 17th day of October, A. D. 1900. Thereafter, to wit, on the 20th day of October, A. D. 1900, said Divers executed a deed to said Rogers and Gannon to an undivided one-sixth interest in said lot, and said deed was properly filed for record on the same day, in said county. Thereafter, to wit, on the same day, said Divers executed to H. C. Henry a deed to an undivided one-third interest in said lot and the same was then and there properly filed for record in said county. Thereafter, to wit, on the same day, the said Rogers and Gannon executed a deed to said Henry to an undivided one-third interest in lot 8, in block 27, and the same was properly filed for record on the same day in said county. Thereafter, to wit, on the 3d day of July, A. D. 1901, said E. C. Gannon executed a deed to Katie Gannon to an undivided one-third interest in said lots 7 and 8, and the same was then and there properly filed for record in said county. On the 18th day of October, A. D. 1898, said town-site board executed to C. E. Gannon and F. H. Ehtriken a deed to said lot 8, and the same was properly filed for record on the 19th day of October, A. D. 1898. Thereafter the said Ehtriken and wife executed to said Rogers, on the 7th day of March, A. D. 1900, a deed covering his interest in said lots, and the same was filed for record on the 8th day of March, A. D. 1900.

The defendants further alleged that they are the owners, as tenants in common, of the real estate described in plaintiff's petition; that they and their grantors have been in the peaceable and quiet possession of said real estate ever since the 3d day of October, A. D. 1898, and long prior thereto, claiming to be the absolute owners thereof, and without any notice, by record or otherwise, that plaintiff claimed any interest or rights in the property described in the petition herein, and have erected valuable and lasting improvements thereon.

That thereafter, on the 4th day of December, A. D. 1903, by permission of the court, defendants filed an additional paragraph to said amended answer, to the effect that on the 13th day of October, A. D. 1898, the said plaintiff commenced an action involving the subject matter of this suit, being entitled "Albert Hammer, Plaintiff, v. William Coyle et al., Defendants"; that said defendants, or their grantors, were parties to said suit, and that the real estate involved in this action was involved in that suit, and was a part of the same subject-matter thereof. Said defendants further allege that after said suit was transferred, on a change of venue, to the district court of Kingfisher county, and on the 21st day of June, A. D. 1900, in said action then and there pending in said court, wherein the said plaintiff and the said grantors of the said defendants were the same parties, and the subject-matter was the same, the issues therein, which were substantially the same as herein involved, were adjudicated, and finally determined, and judgment rendered in favor of the defendants in said action, and that the judgment of the court in said action was finally determined and affirmed by the Supreme Court of the territory of Oklahoma.

Afterwards, on the 1st day of July, A. D. 1903, said plaintiff filed his reply to said amended answer and the additional paragraph thereto, wherein he denied each and every allegation therein contained, not otherwise expressly admitted; and, further replying, admitted that on the 16th day of September, A. D. 1893, the said quarter section of land was subject to homestead entry and that on the 19th day of September, A. D. 1893, William Coyle made homestead entry No. 142 for said land, and on September 28, A. D. 1893, plaintiff filed contest against said entry, alleging prior settlement, in the office of the register and receiver of the United States land office at Enid, and that other homestead claimants filed similar contests, and that on or about the 16th day of April, A. D. 1894, said Hobbs, Bowers, and Kenyon, pretending to be acting as trustees for the alleged town-site settlers on said quarter section of land, were permitted to intervene

therein, and claim said quarter section for town-site purposes. He admitted that said contests and claims of the parties were heard before said land office on or about the 13th day of November, A. D. 1895, and that said case was decided by said register and receiver of said land office, and that said plaintiff by said decision, and by a decision rendered June 16, A. D. 1896, was adjudged and determined by said register and receiver to be duly qualified to enter said land under the homestead laws of the United States, and that said plaintiff had fully complied with all the requirements of said laws up to the time of the rendition of said decision, and that his settlement thereon was prior to the settlement and occupancy of said land by other parties, and that by said decision awarded said land to said plaintiff.

He further admits that, within the time prescribed by law, said case was duly appealed by the parties thereto, other than the plaintiff, to the Commissioner of the General Land Office at Washington, D. C., on the 29th day of April, A. D. 1897, and that said Commissioner decided said case, awarding to the town-site claimants the right to enter said land; that thereafter said plaintiff and others duly appealed from said decision to the Secretary of the Interior, and thereafter, on February 22, A. D. 1898, said Secretary rendered his decision, affirming and sustaining the decision of the Commissioner of the General Land Office, and deciding that each of the claims of said homesteaders, including the plaintiff, was speculative, and designated the board of trustees then in office to make entry of said land for town-site purposes in accordance with law. Plaintiff further admits that said board of town-site trustees made said application, and submitted their proof, and that a patent therefor was issued to them in such capacity by the government. He further admits that said trustees caused a plat to be made of said land, dividing it into lots, blocks, streets, and alleys, and on the 19th day of September, A. D. 1898, they filed the same in the office of the register of deeds of Garfield county, territory of Oklahoma, and that afterwards, on the 19th day of October, A. D. 1898, said town-site board exe-

cuted a deed to said Keegan for lot 7, in block 27, and admits the execution of the various other conveyances alleged and described in said defendant's amended answer.

Plaintiff further states that, prior to the 16th day of September, A. D. 1893, he appeared in one of the booths upon the south line of the territory known as the Cherokee Outlet, and applied to the party in charge of said booth for a certificate entitling him to enter the said outlet on or after 12 o'clock noon, central standard time, on the 16th day of September, A. D. 1893, for the purpose of settling upon a quarter section of land therein and obtaining title thereto under the homestead laws of the United States, and received from said party in charge of said booth such a certificate; that all of the statements made before the officer in charge of said booth, in order to obtain such certificate, were true; that afterwards, at 12 o'clock noon, on said 16th day of September, A. D. 1893, said plaintiff entered upon said land known as the Cherokee Outlet, and ran north from the south line thereof to the land described in plaintiff's petition, and settled upon same under the homestead laws of the United States, and has continuously since said time resided upon said land; and that from the 16th day of September, A. D. 1893, up to a certain date in December, A. D. 1897, said plaintiff was actually present and residing upon and cultivating said land, and had a dwelling house thereon in which he resided; that during said month of December, A. D. 1897, he was employed by the government of the United States as deputy United States jailer at Guthrie, in the territory of Oklahoma; that upon such employment he went to the city of Guthrie, and remained there 12 months in the performance of said duties; that when he left said land to go to the city of Guthrie, he left his said dwelling house, with his furniture therein, and permitted Harvey Buckles and Richard Kennedy to occupy the same; that some time during the fall of 1898 the plaintiff's said dwelling house was removed from said land, with his household goods, without the knowledge or consent of the plaintiff; that he does not know what became of said house, but was informed

and believes that said house was removed from said land by the town-site claimants thereto; that prior to the plaintiff's settlement on said land he had been a soldier in the employ of the United States, in the war generally known as the War of the Rebellion, and served there for a period of 18 months, and was honorably discharged from the service. That plaintiff returned to the city of Enid in December, A. D. 1898, but did not rebuild his dwelling house on said land, for the reason that he feared personal violence and for the further reason that all of said land had been conveyed by said board of town-site trustees to the town-site claimants, and was in the actual possession of said town-site claimants; that prior to 12 o'clock noon, September 16, A. D. 1893, he had never entered upon any land open for settlement; and neither at the time of procuring said booth certificate, nor at the time of entering said Cherokee Outlet, nor at the time of settlement upon said land, nor at any time since that time, was he, nor has he been, nor is he now, the owner of 160 acres of land in any state or territory; that he was at all times herein mentioned more than 21 years of age, and a native-born citizen of the United States; that he settled upon said land honestly, and in good faith, for the actual purpose of settlement and cultivation, and not for the benefit of any other person, persons, or corporation, and intended to, and did faithfully and honestly endeavor to comply with all the requirements of law as to settlement, residence, and cultivation necessary to acquire title to said land; that he was not acting as agent for any other person, corporation, or syndicate in making such settlement, residence, and cultivation, nor in collusion with any person, corporation, or syndicate to give them the benefit of the land, or any part of it, or any timber thereon, and that he did not settle upon the land for the purpose of speculation, but in good faith, to secure a home for himself; that he has not directly or indirectly made, nor will he make, any agreement or contract with any person or persons, corporation, or syndicate whatsoever, by which the title which he might acquire should inure, in whole or in part, to any other person except himself. And plaintiff fur-

ther states that since August 30, 1890, he has not entered under the land laws of the United States, or filed upon a quantity of land, agricultural in character and not mineral, which, with the land settled upon, would make more than 320 acres, and that he has not at any time made any entry under the homestead laws.

Plaintiff further alleges that there was not either introduced, offered, or received, when the said contests were pending before the said register and receiver, or at any other time, any evidence which showed or tended to show that plaintiff's settlement, residence, and cultivation upon said land was speculative, or in any other respect not made in good faith, and the said finding of the Commissioner of the General Land Office and the Secretary of the Interior was made in violation of the plaintiff's rights as a homestead settler upon said land, and without any evidence, agreement, or admission whatever to sustain the same. A true and correct transcript of all the evidence, agreements, and admissions, either offered, introduced, or received at the hearing of said contests before the register and receiver of said Land Office, the same being all the evidence ever received in said contests, is attached to said reply as a part thereof. Plaintiff further alleges that no evidence was ever offered or introduced, at any stage of said proceedings, that any alleged occupant was qualified to acquire title to said land under the town-site laws. And, further, that upon the rendition of said decision by the Secretary of the Interior, and within the time prescribed by the rules of practice of the United States Land Office and the Department of the Interior, the said plaintiff filed with said Secretary of the Interior a motion to review said decision, upon the ground that same was contrary to law, and not supported by the evidence therein, which said motion was considered and overruled by said Secretary of the Interior.

Plaintiff further states that said entry by the town-site trustees was permitted, and the said patent issued to said trustees, and the said plat made and filed by said trustees, without his consent, acquiescence, or approval, and that prior to the convey-

ance of said real estate by said town-site trustees, said plaintiff instituted an action, in the district court of said county, against said board of town-site trustees, seeking to enforce his rights to said property, which action was in said court decided against the plaintiff, for the reason that it was held by the court that said action could not be maintained while the title to said land was held by the trustees; that said plaintiff afterwards appealed said case to the Supreme Court of the territory of Oklahoma, which affirmed said decision upon the same ground upon which it was rendered. Plaintiff further states that said action was filed on the 13th day of October, A. D. 1898, and said decision was rendered by the Supreme Court of said territory on the 6th day of July, A. D. 1901. Plaintiff further states that all of the several conveyances described in plaintiff's petition were made, executed, and accepted by the various parties thereto, with full knowledge of the rights of plaintiff in and to said land, and during the pendency of said last-described action and proceedings.

Plaintiff further states that the improvements made upon said land involved in this action, by the defendants, if any have been made, were made by them on their own account, and for their own use and benefit, and not at the request or solicitation of the plaintiff, and with full knowledge on the part of said defendants of the rights of said plaintiff to said property.

Thereafter, in due time, plaintiff moved that said cause be tried by jury, which motion was by the court denied, and said cause was tried by the court, and judgment rendered in favor of the defendants; and thereupon, at the same term at which said judgment was rendered, plaintiff made proper demand for a second or new trial as a matter of right, and said demand was entered on the journal of said court, and denied or overruled by the court.

*Rush & Steen, M. A. Low,* and *Blake, Blake & Low,* for plaintiff in error.

*Roberts & Curran* and *W. S. Denton,* for defendants in error.

WILLIAMS, C. J. (after stating the facts as above). Plaintiff

in error contends that, in suits for the recovery of possession of real property, the unsuccessful party is entitled to a second trial, regardless of the kind or character of the action, whether legal or equitable, so long as the real question at issue is a trial of the title to said real estate and the right of possession thereof. Section 4792, Wilson's Rev. & Ann. St. 1903 (section 594, Civ. Code), provides:

"In an action for the recovery of real property the party against whom judgment is rendered may at any time during the term at which the judgment is rendered, demand another trial by a notice on the journal, and thereupon the judgment shall be vacated, and the action shall stand for trial at the next term."

In the case of *Kennedy v. Haskell et al.*, 67 Kan. 612, 73 Pac. 914, Mr. Justice Cunningham, speaking for the court, says:

"While partition and a claim for rents and profits was joined with the action in ejection, such joinder and the relief thereby demanded were mere incidents of the main action, which was the recovery of real property, and followed, as a matter of course, the decision of that main question. The fact that the plaintiff set out *in extenso* the details of her claim, rather than that she confined herself as she might have done, to the strict legal statement that she had an interest in the land and was entitled to the possession of it, did not make the action less a one for the recovery of the land. We have already held (*Cheesebrough v. Parker*, 25 Kan. 566) that the joining of a claim for the mesne profits with one for the recovery of real estate does not deprive the party of a new trial as a matter of right; the recovery of such profits being a mere incident of the action. Within the logic of this case would fall the same conclusion as to partition, indeed such has been held in several cases in Indiana. *Physio-Medical College et al. v. Wilkinson et al.*, 89 Ind. 23; *Cooter et al. v. Baston et al.*, 89 Ind. 185; *Kreitline et al. v. Franz et al.*, 106 Ind. 359, 6 N. E. 912; *Powers v. Nesbit et al.*, 127 Ind. 497, 27 N. E. 501. This case cannot be held to be analogous to that of *Douglas v. Nuzum*, 16 Kan. 515, or *Main v. Payne*, 17 Kan. 608, which were actions to quiet title, nor to *Keith v. Keith*, 26 Kan. 26, which was an action to reform a deed. We are of the opinion that, where the principal object in an action is the recovery of real property, not whether plaintiff states his cause of action in the language of the

statute or by detailing the facts at length, he is entitled to the second trial as a matter of right, and this, although he may demand other relief than such recovery, provided that such other relief is but incidental to recovery."

In jurisdictions where courts of law and equity are separate, distinct suits in partition are cognizable alone in chancery, and can be maintained only where the party seeking the partition is in possession of the lands sought to be partitioned.

The case of *Rogers v. Clemmans et al.*, 26 Kan. 523, cannot be harmonized with the *Kennedy Case, supra,* the Kansas authorties being at variance upon this propostion.

In the case of *Gray Cloud Land Co. v. Security Trust Co. et al.*, 93 Minn. 369, 101 N. W. 605, Mr. Justice Brown, speaking for the court, said:

"The only question presented is whether the action is one in which the plaintiff was, under the statute, entitled to a second trial as a matter of right, the action having been once tried, resulting in a judgment for the defendant. In determining this question we must look to the substance of the action as disclosed by the pleadings, and not to its form; and if, in fact, it is one in which the plaintiff seeks to recover the possession of land, though other issues may be presented, the right to a second trial exists. *Gahre v. Berry,* 79 Minn. 20, 81 N. W. 537; *Finnegan v. Brown,* 81 Minn. 508, 84 N. W. 343. With this rule in mind we examined the complaint, and find allegations to the effect that plaintiff was, on a certain date, the owner in fee simple, and possessed an absolute estate of inheritance in the land, which is described therein, that it was at that time in the possession of the same, and that, in the year 1894 or 1895, defendant Security Trust Company wrongfully and unlawfully entered upon the land while so in plaintiff's possession, and has since unlawfully held, and now holds, the same forcibly and adversely to the plaintiff. The prayer for judgment is, among other things, that plaintiff have judgment for the recovery of the land and the possession thereof. The complaint also alleges and sets forth the source of defendant's title, alleging that it was procured through the unauthorized and fraudulent conduct and acts of an agent of plaintiff, and that it is void, and of no effect. Further relief demanded is that the record evidence of defendant's title, so fraudulently obtained, be vacated.

canceled, and set aside. It also demands that, in case the court should find that defendant's title was not obtained by the fraudulent conduct of plaintiff's agent, plaintiff have judgment against the agent, who was made a party to the action for damages. But the controversy between plaintiff and the Security Trust Company involves, solely and exclusively, the title and right to the possession of the land, and the case comes within the rule laid down in *Gahre v. Berry* and *Finnegan v. Brown, supra,* and the court below properly denied the motion to strike the demand from the files. The new trial must be limited, however, to the controversy between these parties, and to the issues affecting the ownership, the right to the possession of the land, and the value of the use thereof from the time the defendant trust company took possession. It is not important that issues other than the title and right to the possession of the land are involved in this action, for upon all issues not affecting such title or right to the possession the former judgment is final and conclusive. In the case of *Schmitt v. Schmitt,* 32 Minn. 130, 19 N. W. 649, which was an action for divorce, the court held that, as the title and right to the possession of certain land was also involved in the litigation, a second trial of the action was proper upon those questions, notwithstanding the fact that the action was in the form of one for divorce."

Section 5845 of the General Statutes of Minnesota of 1894 (volume 2) provides as follows:

"Any person against whom a judgment is recovered in an action for the recovery of real property, may, within six months after written notice of such judgment, upon payment of all costs and damages recovered thereby, demand another trial by notice to the adverse party, or his attorney in the action; and thereupon the action shall be retried, and may be brought to trial by either party: Provided, that in all causes in which an appeal shall be taken from such judgment to the Supreme Court, such demand for another trial may be made at any time within six months after written notice of the determination of such appeal, and thereupon the action shall be retried, and may be brought to trial by either party."

In the case of *Dangerfield v. Paschal,* 20 Tex. 540, Mr. Justice Lipscomb, speaking for the court, said:

"There was a former suit between the same parties for the

same land, the subject-matter of this suit, in the nature of equitable proceedings, in which the plaintiffs allege that the defendants have set up claim to said land by virtue of locations and patents; that the plaintiffs are the legal and *bona fide* owners of the said land; that the location so made by the defendants and the claim of title under the same form a cloud on the plaintiff's title; that the defendants have committed trespass upon the said land by cutting down and carrying away timber. They pray that, by decree of the court, the cloud upon their title may be removed; that defendant's location and patents be vacated; that title to said land be decreed to be in the plaintiffs; that an account be taken of the damage committed by said trespass, and defendants be decreed to pay the same to the plaintiffs; and that defendants be enjoined from committing further trespass on the said land. The defendants answered, denying the plaintiffs' right or title to the land, and claiming the same under and by virtue of locations and valid land certificates on the said land, on some of which certificates patents have been issued to the defendants. On trial of that suit judgment was given for the defendants, and on appeal the judgment was affirmed. The plaintiffs then brought another suit for the same land, and dismissed it, and brought this suit. The defendants pleaded the former judgment, which plea was sustained, and the plaintiffs appealed. The appellants claim a reversal of the judgment in this case, under the seventh section of 'An act to provide the mode for trying titles to land.' It is as follows: 'That in an action of trespass to try titles to land, commenced within the time limited by law, the plaintiff shall proceed with all convenient expedition to the trial of the same, and in case a verdict and judgment shall pass against him in such action. such verdict and judgment shall not be conclusive and definite against the plaintiff, but at any time within one year the said plaintiff or any other person claiming under him, shall have a right to commence his action for the recovery of said lands *de novo,* and prosecute the same. * * *' The majority of the court believe that under the law cited the plaintiffs had a right to two trials on the merits, and that the fact of the first suit, not being brought under the statute, will not abridge that right; that the suit that had been brought and dismissed after first was decided interposes no bar to this suit, because it was not tried upon its merits, and this suit was brought within 12 months after the decision of the first. The section of the statute before cited seems to require that

the second suit shall be tried on the merits of the title to constitute a bar to another action.   In continuation of the part of the section recited, it is as follows. i. e.:  'But in case a verdict and judgment again pass against such plaintiff, then such second verdict and judgment shall be finally conclusive on the part of every such plaintiff, and he shall be forever barred and excluded from any further action or suit for the recovery of the same land.'  The second suit was not tried and prosecuted to verdict and judgment. The conclusion is, therefore, that the court below erred in sustaining the plea of former recovery."

A rehearing having been granted in said case thereafter, Mr. Justice Roberts delivered the opinion of the court thereon, wherein he said:

"The former suit, the judgment in which is set up in bar of this, is of a mixed character, to establish plaintiffs' title as against a number of persons claiming title to the same land under adverse titles, and to quiet plaintiffs in the enjoyment of the same, free from litigation and harrassment in relation thereto.   It is in the nature of a bill of peace, 'which is brought by a person to establish and perpetuate a right which he·claims, and which, from its nature, may be controverted by different actions.'  2 Story, Eq. Jur. § 853.  'Courts of equity, having a power to bring all the parties before them, will at once proceed to the ascertainment of the right; and, if it is necessary, they will ascertain it by an action or issue at law, and then make a decree finally binding all the parties.' Id. § 854.   The petition alleged rights in the plaintiffs and trespasses by defendants.  It has been held by this court at an early day that, in an action of trespass to try title to land, several defendants might be joined in the same action by a plaintiff whose right was the same as against all the defendants.   The point of difference between this and an ordinary suit of trespass to try title was that in this plaintiffs sought to set aside the patents and conveyances of defendants, as having been made and procured in fraud of their rights.  The alleged fraud did not relate to any transaction between plaintiffs and defendants which rendered them fraudulent.   Defendants' title had no connection with that of plaintiffs', except that of locality.  Each party claimed under different titles emanating from the government.  If plaintiffs' title was good, and they obtained a judgment upon it against the defendants, that settled plaintiffs' right, for the time, at any rate. Whether this would entitle plaintiffs to enjoin defendants from

hereafter suing on their title would depend upon the facts additional and cumulative to those necessary to the maintenance of plaintiffs' mere superior right to the land. The superaddition of these facts, by which the plaintiff sought this additional remedy, does not the less render it a suit to try title; for the title of plaintiffs must be established as a prerequisite to the additional relief. If it be established, the plaintiffs would be entitled to a judgment to that effect whether the additional facts alleged and proved entitled them to this additional relief or not. The omission to' indorse on the petition that the action was brought to try the title, as directed in the statute, cannot control the nature of the suit, when it necessarily involved the right of the plaintiffs' title; and if its character and object could have been mistaken, by which the defendants were about to be misled in their defenses, they should have excepted to the petition on that ground."

See, also, *Atchison v. Owen,* 58 Tex. 614; *Thompkins v. Railroad Co.,* 30 S. C. 481, 9 S. E. 521; *Hunter et al. v. Christman,* 70 Ind. 440; *Keller v. Hawk,* 13 Okla. 261, 74 Pac. 106; *Equator Mining & Milling Co. v. Hall et al.,* 106 U. S. 86, 1 Sup. Ct. 128, 27 L. Ed. 114; *Smale v. Mitchell,* 143 U. S. 99, 12 Sup. Ct. 353, 36 L. Ed. 90.

Under the old common law the defeated party in a judgment in ejectment, whether claimant or defendant, was always at liberty to bring a new action, and from the structure of the record it was impossible to plead a former recovery in bar of the second suit, as the plaintiff was ever a fictitious person, and a demise could be laid in so many different ways that it never could be made to appear that the second ejectment was brought upon the same title as the first. Obviously, therefore, the judgment could never be final, and the only permanent relief which the successful party could obtain was by a perpetual injunction against the defendant. Even this could be procured only in exceptional cases. The general rule was that a recovery in ejectment was never conclusive upon the defendant, or those claiming under him. As the action later on was invoked for the establishment of title, as well as for a recovery of possession, the vexatious privilege of unlimited litigation was abridged, and by statute but one new trial was permit-

ted as a matter of right, and when two verdicts of the same tenor had been returned, the judgment rendered thereon was taken to be conclusive. At that time, however, the courts of law and of chancery were separate and distinct. This has become the declared policy of a number of the code states, some of which, however, have abandoned it. In view, however, of the present conditions it rests on but little legal reason; though it seems to have become so firmly established in the jurisprudence of American states that it will probably long remain. The only reason that now exists in support of the doctrine is the sacredness of the home, whilst under the old feudal system vast estates, with castles and privileges, were created, and the different forms of actions and writs came into existence for their protection. Under our institutions such estates are not for the best interests of our country, and in this state, which was populated by homesteaders and homeseekers, such vast-landed estates are not favored. Hence, under a commonwealth whose policy is to foster and build up homes, rather than the establishment of a tenantry system, and with a view of making the title and possession of home more secure, naturally there would follow the reason for a second trial of a suit for the recovery and possession of land.

Under our practice, though, a suit for the recovery and possession of land should be properly termed one in equity; and, though the parties thereto, as a matter of right, be not entitled to a jury trial, why would not the same reason exist for a trial anew where its purpose is to try title and recover possession? Where questions of fact, other than by the pleadings, arise, the court may direct a reference to a referee to report the facts (section 4479, Wilson's Rev. & Ann. St. 1903), and when the report as to the facts by the referee has the effect of a special verdict (section 4480, Wilson's Rev. & Ann. St. 1903) the same reason is obvious.

We conclude that, as a matter of right, the plaintiff was entitled to a second trial, and it is so ordered.

Reversed and remanded.

All the Justices concur.